IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FRANK VICARETTI, JR.**,

    Petitioner,

v.                                                                    **Civil Action No. 1:10cv91**
                                                                    **(Judge Keeley)**

**JOEL ZIEGLER, Warden,**

    Respondent.

## REPORT AND RECOMMENDATION

### I. Procedural Background

The *pro se* petitioner initiated this case on June 11, 2010, by filing a Writ of Habeas Corpus Pursuant to 20 U.S.C. § 2241. (Doc. 1). The petitioner paid the required $5.00 filing fee on June 14, 2010. (Doc. 5). Pursuant to 18 U.S.C. §§ 3621 and 3624, the petitioner challenges the Bureau of Prisons' ["BOP"] decision to place him in a Residential Release Center ["RRC"] for less than the maximum allowable twelve months. On June 15, 2010, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted, and directed the respondent to file an answer to the petition. (Doc. 6). The respondent filed a Motion to Dismiss or for Summary Judgment on July 13, 2010. (Doc. 10). Because the petitioner is proceeding *pro se*, the Court issued a Roseboro Notice on July 14, 2010. (Doc. 13). On August 5, 2010, the petitioner filed a response. (Doc. 17).

### II. Factual Background

The petitioner is currently incarcerated at the Federal Correctional Institution in Morgantown, West Virginia ("FCI Morgantown"). He is serving a 24 month sentence imposed by

1

the United States District Court for the Western District of New York. (Doc. 12-2, p. 2). The petitioner's projected release date is March 10, 2011. (Doc. 12-2, p. 1). He has been recommended for placement in a RRC for the last 60-90 days of his incarceration. (Doc. 12-1, p. 4).

### III. Issues Presented

In his petition, the petitioner asserts that the BOP's decision with respect to his pre-release placement in a RRC was a direct violation of the Second Chance Act. In addition, the petitioner claims that the BOP's decision was in bad faith and without any attempt to comply with the law. The petitioner further alleges that the BOP, and specifically, FCI Morgantown, abused its discretion by issuing arbitrary form decisions to those appealing its decision. Finally, the petitioner alleges that the "BOP lost its discretionary standard of review, and also breached the de novo [ ] of review, as a result of its decision and its monetary conflict of interest." (Doc. 1, p.2).

In his response to the petition, the respondent argues that the petition should be dismissed because the petitioner failed to exhaust his administrative remedies. In addition, the respondent argues that the BOP's determination regarding the duration of the petitioner's RRC placement is not subject to judicial review. Additionally, the respondent argues that the BOP did not abuse its discretion with regard to its RRC review and referral of the petitioner's case pursuant to the Second Chance Act. Finally, the respondent argues that the petition should be dismissed as moot because the petitioner has received the only relief to which he is entitled – consideration of his RRC placement In accordance with the factors delineated in 18 U.S.C. § 3621(b).

In reply, the petitioner argues that he did exhaust his administrative remedies because he raised the issue of excusable neglect, and the government assented by failing to refute his argument. In addition, the petitioner contends that the government "admitted via silent assent that Unit

Manager Adams stated on January 15, 2010 that neither he nor anyone else at FCI Morgantown would ever be allowed to get more than six months RRC placement." (Doc. 17, p. 2). In addition, the petitioner asserts that the government "admitted via silent assent that the BOP's RRC decision-making process and financial benefits to staff is not only a 'possible temptation' to the average person, it is unconstitutionally infected by an inherent financial conflict of interest." (Id.). Finally, the petitioner argues that Supreme Court cases hold the type of financial conflict of interest evidenced by [ ] and assented to by the government is unconstitutional. Accordingly, the plaintiff argues that the "governing authorities and facts require this Court to execute a de novo review as to the proper RRC placement time for [the petitioner] because the BOP decision-making process violated his due process rights via an inherent financial conflict of interest." (Doc. 17, p.5).

## IV. **The Second Chance Act**

On April 9, 2008, the Second Chance Act of 2007, Pub.L.No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." See 18 U.S.C. § 3624(c)(1). The statute provides that those conditions may include confinement in a community correctional facility/community corrections center/residential re-entry center, all of which are commonly known as a "half-way house." The statute provides that the decision to confine a prisoner in a "half-way" house shall be made on an individual basis and shall be made in light of several factors, most of which are identified in 18 U.S.C. 3621(b). See Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008) [BOP may consider factors in addition to those identified in 3621(b)]. The factors identified in 18

U.S.C. 3621(b) are as follows:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

## V. Analysis

### A. Exhaustion of Administrative Remedies

In this particular case, the respondent argues that the petitioner failed to exhaust his administrative remedies regarding his RRC placement. More specifically, the respondent contends that the petitioner filed an administrative remedy at the institutional level, but because his appeals to the Regional Office and Central Office were untimely and improperly formatted, they were rejected without review. The respondent further notes that while the Bureau will sometimes accept a late appeal if there is a valid, staff verified, reason, the petitioner's appeal did not meet those criteria.

The respondent further argues that under the PLRA, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The respondent then cites several cases in which the Supreme Court and the Fourth Circuit Court of Appeals have held that under the PLRA, Congress has

4

mandated the proper completion of any prison administrative remedy process capable of addressing an inmate's complaint and providing some form of relief prior to filing suit in federal court. See Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 531 U.S. 956 (2001); Anderson v. XYZ Prison Health Services, Inc., 407 F.3d 674 (4th Cir. 2005). In addition, the Respondent notes that the Fourth Circuit has applied these same principles to petitions for writ of habeas corpus. See Asare v. U.S. Parole Comm., 2 F.3d 540, 544 (4th Cir. 1993); Miller v. Clark, 958 F.2d 368, 1992 WL 48031 (4th Cir., March 16, 1992). Accordingly, the respondent argues that this petition should be dismissed for failure to exhaust administrative remedies.

While the undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions, the respondents argument misses the mark. The requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)).[1]

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement

---

[1] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

5

is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue. at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

In this particular instance, the respondent argues that the petitioner failed to exhaust his administrative remedies because his appeals to the Regional Office and Central Office were untimely and improperly formatted, and were accordingly rejected without review. (Doc. 11-1, p.3). In reviewing the information provided by both the petitioner and respondent, it does appear that the petitioner's regional appeal was denied as untimely and for not being in the proper format. However, it appears the petitioner submitted written statements from his counselor on BOP letterhead explaining that the administrative remedy was given to the petitioner ten (10) days after the response date causing him to be untimely. (Doc. 1-2, pp. 11-12). The Regional Office did not acknowledge these statements, despite advising the petitioner that he should resubmit his appeal with staff verification on BOP letterhead as to why his request was late. (Doc. 1-2, p. 8). Moreover, the rejection notices gave no explanation as to what was improper about the format of his appeal.

A more thorough explanation by the respondent might help explain why the petitioner's administrative remedies were rejected. However, this case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this

juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that, to the extent that the petitioner failed to do so, exhaustion should be waived and this case proceed to a determination on the merits.

**B. 18 U.S.C. § 3625**

In accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review. In this case, the petitioner challenges the length of time the BOP has deemed appropriate for him in an RRC prior to his release. That decision is governed by 18 U.S.C. § 3624(c)(1). As previously noted, that section now provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Because such a determination involves a decision regarding an inmate's place of imprisonment, in making a determination under § 3624(c), the Director must necessarily consider the five factors enumerate in 18 U.S.C. § 3621(b), as outlined previously in this Report. However, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded subsections 3621 and 3624 from judicial review under the APA. See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Accordingly, any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court. See Lyle v. Sivley, 805

7

F.Supp. 755, 760 (D.Ariz. 1992). However, even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority. Webster v. Doe, 486 U.S. 592 (1988); Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974); Davis v. Beeler, 966 F.Supp. at 489.

It is well-established that an inmate has no constitutional right to be confined to a particular institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred. For the reasons discussed below, the undersigned has determined that no such violation has occurred.

The petitioner argues that the BOP has exhibited, on an institutionalized basis, its bad faith unwillingness to comply with the Second Chance Act. The petitioner then refers to various memoranda issued by the BOP implementing the Second Chance Act. The first such memorandum was issued on April 14, 2008 and entitled "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007." It instructed that RRC placement be based on individualized review of each inmate's case. The April 14, 2008 memorandum notes that, under the Act, the- pre-release RRC placement time frame is increased to a maximum allowable 12 months. It further states that:

> While the Act makes inmates eligible for a maximum of 12 months pre-release placements, Bureau experience reflects inmates'

> pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

See Strong v. Schultz, 599 F.Supp2d, 556, 559 (D.NJ 2009). In addition, the BOP issued another memorandum on September 3, 2008, which describes the terms of the Second Chance Act and states generally that [t]he BOP's goal is to place inmates in RRCs for the amount of time necessary to provide the greatest likelihood of successful re-entry into the community." Bernard v. Roal, 2010 WL 2308198 (S.D.N.Y). This second memorandum concludes:

> Because the Second Chance Act prescribes the maximum amount of time for which inmates are eligible for pre-release RRC placement, as 12 months, BOP staff are reviewing each inmate for pre-release RRC placement 17-19 months before the inmates projected release date. Notwithstanding the statutory cap of 12 months, it is the BOP's experience that inmate's re-entry needs can usually be met with 6 months or less in an RRC. **An RRC placement beyond 6 months will only be approved upon a showing of an inmate's extraordinary and compelling re-entry needs**. The BOP will continue to balance each inmate's individual needs with the agency's duty to use its limited resources judiciously and to provide re-entry services as to many inmates as possible.

Id.

Finally, on October 21, 2009, the BOP issued a regulation which provides as follows:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, with the time-frames set forth in this part.

28 C.F.R. § 570.22.

In the two years since the Second Chance Act was passed, courts have frequently examined the BOP policy statements implementing the Act. In particular, much of the recent litigation in this

9

field has focused on whether policy guidance that (1) notes that many inmates can be successfully integrated into society in 180 days or less; and (2) requires regional director approval for placements in excess of six months violate the Act by creating unwarranted institutional and bureaucratic obstacles to 12-month placements.

"The majority view, reflected in numerous trial court opinions, and in the only appellate court decision to have considered this issue, holds that the Bureau of Prisons' requirement of regional director approval, and the agency's stated view that many inmates can have their needs meet [sic] through 180-day RRC placements, do not violate the Act." Ramos v. Holt, 2010 WL 2471707 (M.D.Pa.) (collecting cases). In reaching this conclusion, the opinions have reasoned that these policies reflect the broad discretion given the BOP to implement the Act. Therefore, these cases find nothing fundamentally objectionable about the policies "provided that each inmate receives the individualized consideration of this RRC placement called for by the Act." Id.

The undersigned recognizes that two cases have reached an opposite conclusion. See Kreuger v. Martinez, 665 F.Supp.2d 477, 482-83 (M.D.Pa. 2009); Strong v. Schultz, 599 F.Supp.2d 556, 563 (D.N.J.2009). Kreuger concluded that "the BOP has functionally placed a lid on the discretion that it wants staff to exercise," and that "the institutional preference for a RRC placement of six months or less...is contrary to the apparent purpose of the Second Chance Act. Kreuger at 483. Strong reached a similar conclusion and also found that the requirement that written correspondence be obtained of the Regional Director "impermissibly constrains staff's discretion." Strong at 563.

However, the Second Chance Act does not vest discretion in "staff" but instead in the Director of the BOP. Therefore, it is consistent with the Act for the BOP to require the involvement of a specific individual subordinate to the director in exercising that discretion. Bernard supra.
10

Furthermore, the memoranda's requirement for "extraordinary" showing for placements longer than six months has been upheld as consistent with the exercise of administrative discretion because it constitutes "a standard for deciding whether to grant a request for extended placement in an RRC." Id. (collecting cases). Finally, the limitation on access to the RRC "is rationally related to one of the statutory factors which govern prison placements; namely, the allocation of limited available prison resources." McDonald v. Obama, 2010 WL 1526443 (M.D. Pa. Mar. 15, 2010) at *8 (citing 18 U.S.C. § 3621(b)). Accordingly, the undersigned has concluded that to the extent the petitioner rests his argument on BOP's memoranda, and the decisions issued in Strong and Kreuger, the same fails to state a basis for a grant of habeas corpus.

The undersigned has also considered the petitioner's allegation that "the real reason for the BOP's violation of the Second Chance Act law is straightforward: if the BOP follows the law, it loses funding because its budget goes does. Therein lies the inherent conflict of interest..." (Doc. 1, p. 7). In support of this argument, the petitioner cites to the testimony of Harley Lappin before the United States Sentencing Commission regional hearing in Austin, Texas on November 20, 2009. In his statement, Mr. Lappin noted the following:

> The Second Chance Act expands the Bureau's authority to place inmates into RRCs by extending the time limit from the 10% (not to exceed six months) to 12 months and authorizing the agency to place inmates with short sentences (12 months or less) directly into RRCs for service of their entire term of imprisonment. Based on the mission of the agency – to confine offenders in institutions that are secure and cost efficient and provide opportunities to prepare for reentry – the Bureau of Prisons rarely uses RRCs for direct court commitments and rarely transfers inmates to RRC for prerelease services for more than 7 months. Most inmates with short sentences are appropriately placed in federal prison camps, which are minimum security, much less costly than RRCs and offer a wide variety of inmate programs; and most releasing offenders receive the necessary transitional assistance in three to four months at an RRC. While it is certainly desirable for offenders to remain with their

familiesinthecommunityforextendedperiodsoftime,such
placements cannot be justified within the agency mission as cost
efficient and necessary to address reentry needs.[2]

In support of his position, the petitioner cites case law that any agency decision is improper if "motivated by improper factors or is otherwise contrary to the law." Marshall v. Jerrico, Inc., 446 U.S. 238, 239 (1980). He always quotes: "a refusal to enforce [the ]law] that stems from a conflict of interest, the result of a bribe...that traces to personal or other corrupt motives ought to be judicially remediable."[3]

Given the context of his speech, Mr. Lappin's statement clearly does not reflect the financial conflict of interest that has prompted courts to review agency decisions. As Director of the BOP, Mr. Lappin has a legitimate right to be concerned with budgetary constraints. However, the decision to place an inmate in an RRC for less than the maximum of twelve months provides no financial benefit to the staff members making the referral. Accordingly, the petitioner can show no personal interest, financial or otherwise, that would raise constitutional concerns with his RRC placement.

Accordingly, the issue becomes whether the petitioner was properly reviewed for RRC placement utilizing the required five factors. In recommending that 60-90[4] days would be a sufficient amount of time for the petitioner to take full advantage of the transitional services and programs in the RRC to facilitate his transition back into the community, staff specifically noted

---

[2]The petitioner cited only a portion of this text and provided no source for the text. However, several inmates have recently filed 2241 petitions challenging their RRC placements and have advanced similar arguments to those of the instant petitioner. Exhibit B in case 2:10cv59 is a transcript of Mr. Lappin's entire statement from November 20, 2009.

[3]It is not clear what decision the petitioner is citing.

[4]Although the RRC referral form reflects a placement time of 1-90 days, the one day minimum is due to a limitation in the computer system. His referral is for 60-90 days as reflected in the ISDS report. (Doc. 12-1, p. 4).

that: (1) there is a RRC in his release area; (2) the offense committed indicated eligibility for RRC (3) history and characteristics: has residence, needs to secure employment; (4) no statement (J&C) by the sentencing district; and (5) no pertinent policy by the sentencing commission. (Doc. 12-4). Moreover, the Referral Form for RRC Placement must be read in conjunction with the May 27, 2010 Progress Report related to the petitioner. The substance of that report, coupled with staffs' ongoing knowledge of the petitioner and his case file, directly relate to factor 3 of the 5 factor review – the history and characteristics of the petitioner. In the report, staff note that the petitioner will reside with his mother upon release, evidence of his strong community ties. The report also shows that he holds a college degree and had no history or substance abuse in the year prior to his arrest. Taking all of this information into account, the petitioner's Unit Team determined that 60 to 90 days of transitional RRC placement time would be of sufficient duration. (Doc. 12-1, pp. 3-4).

Accordingly, as required by the Second Chance Act, the petitioner's Unit Team made its review on an individual basis and considered the appropriate factors in recommending that he be placed in an RRC for a period of 60 to 90 days. There is no evidence that the determination was arbitrary, capricious, or an abuse of discretion. Therefore, the petitioner cannot show that BOP officials violated the Second Chance Act, and his petition should be dismissed.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 10) be **GRANTED,** and the petitioner's §2241 petition be **DENIED** and **DISMISSED with prejudice**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the

13

Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: 10/27/2010

/s/ David J. Joel
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE